**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2356-WJM-KLM

MASTEC POWER CORPORATION,

    Plaintiff,

v.

GATEWAY COGENERATION I, LLC, and
POWER ENGINEERS, INCORPORATED,

    Defendants.

---

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
AND DENYING MOTION TO STRIKE**

---

Plaintiff MasTec Power Corp. ("MPC") accuses Defendants Gateway Cogeneration I, LLC ("Gateway") and Power Engineers, Incorporated ("Power Engineers") (jointly, "Defendants") of various causes of action arising from Defendants' alleged misappropriation of MPC's trade secrets. (*See* ECF No. 2.) Before the Court is MPC's Motion for Preliminary Injunction ("PI Motion"), filed on August 21, 2020. (ECF No. 27.) Also before the Court is Power Engineers's Motion to Strike MPC's Reply Brief ("Motion to Strike"), filed on September 10, 2020. (ECF No. 45.)

Having reviewed the parties' filings, the Court finds that an evidentiary hearing is not necessary. For the reasons that follow, the Court denies the PI Motion and denies the Motion to Strike.

**I. BACKGROUND**

The parties dispute most of the relevant facts. The Court need not resolve those

disputes for the purposes of the analysis below.  The following facts, in the form alleged by MPC, are enough to frame the issues.

MPC specializes in providing engineering, procurement, and construction ("EPC") solutions for power generation projects.  (¶ 15.)[1]  It has developed substantial expertise concerning constructability reviews and analyses; site layout drawings, plans, and arrangements; subcontractor and vendor pricing information; project-specific cost estimates; project schedules and related scheduling analyses; work sequence and work flow analyses; construction productivity rates and analyses; trade coordination and sequencing analyses; supplier lists, requirements, and scopes of work; EPC contract, risk profile, and terms and conditions; and project execution plans.  (¶ 16.)  MPC considers these categories of information to be trade secrets.  (*Id.*)  Moreover, MPC has devoted significant time and resources to create strong business relationships with suppliers and engineers in the power community.  (¶ 17.)

In February 2020, Gateway solicited an expression of interest from MPC to serve as the EPC contractor for a high-efficiency, combined-cycle gas turbine electric generating plant that Gateway was developing in Bradford County, Pennsylvania (the "Project").  (¶¶ 2, 23.)

**A.    MPC and Gateway's NDA**

To facilitate the exchange of confidential information, MPC and Gateway entered into a non-disclosure agreement (the "Gateway NDA") on February 20, 2020.  (¶ 24; ECF No. 23-3 at 2.)  The Gateway NDA contemplated, among other things, that (1)

---

[1] Citations to paragraph numbers, without more, *e.g.* (¶__), are to paragraphs in MPC's Complaint and Jury Demand.  (ECF No. 2.)

2

MPC would develop and share confidential information with Gateway regarding the Project; (2) MPC would retain ownership of its confidential information; (3) Gateway was prohibited from disclosing MPC's confidential information "to any person other than its Representatives who need to know such [c]onfidential [i]nformation in connection with [Gateway's] evaluation of the project"; and (4) Gateway would use MPC's confidential information "solely in connection with its evaluation of the Project" and may not use such information for its "own benefit or for any other purpose." (¶¶ 25–27.) The NDA defines confidential information as:

> Certain non-public and confidential information from or about the other Party or its affiliates, including but not limited to technical information, financial information, methods of doing business, business plans and models, pricing and cost information, contract terms and conditions, marketing methods and strategies, names of suppliers, customers, creditors or partners, proposed transactions, market projections, names and compensation of employees and consultants, software programs, and other confidential and proprietary information relating to the Project.

(¶ 25; ECF No. 23-3 at 2 ¶ 1.)

On March 20, 2020, Gateway and MPC entered into an Expression of Interest Agreement whereby Gateway agreed that MPC would be selected to "provide BOP EPC services to [Gateway] for the Project," contingent upon Gateway and MPC "reaching mutually agreeable pricing and scheduling." (¶¶ 29–31; ECF No. 23-3 at 8.) MPC agreed to dedicate substantial resources to support Gateway's pursuit of the Project, and to defer payment until Gateway achieved certain Project financial milestones. (¶ 32.)

**B.     MPC and Power Engineers's Teaming Agreement**

In furtherance of MPC's Project efforts, MPC entered into an exclusive teaming agreement (the "Teaming Agreement") with Power Engineers, a design and engineering firm, whereby Power Engineers agreed to perform engineering services exclusively for MPC in connection with the Project.  (¶¶ 5, 33.)

Under the terms of the Teaming Agreement, Power Engineers may disclose MPC's confidential information to "its employees, subcontractors, agents, consultants, advisers or legal counsel" but cannot "disclose, cause, or permit to be disclosed [MPC's confidential information] to any third-party . . . ."  (¶ 35; ECF No. 23-3 at 12 ¶¶ 6(b)–(c).) The Teaming Agreement defines Confidential Information as

> any and all tangible and intangible information, whether oral or in writing or in any other medium, relating to the pricing, estimating, products, inventions management and operations of either Party, including without limitation, any and all trade secrets, know-how, designs, formulations, ingredients, samples, processes, machines, processing and control information, product performance data, manuals, supplier lists, customer lists, purchase and sales records, business or financial plans and records, marketing information and computer programs, whether developed by that Party or furnished to that Party by a third-party, and all the derivative works, inventions and uses thereof . . . .

(¶ 34; ECF No. 23-3 at 12 ¶ 6.)  Upon termination of the Teaming Agreement, Power Engineers was obligated to "return or destroy all Confidential Information upon the request" of MPC.  (¶ 36; ECF No. 23-3 at 12 ¶ 6.)

**C.     MPC Shares Its Confidential Information with Gateway and Power Engineers**

Following execution of the NDA and Teaming Agreement, MPC spent hundreds

of hours developing "Project-specific work-product regarding preliminary project design, pricing, constructability, construction execution, schedule, and Project scoping," and "leveraged its reputation and market presence to enter into relationships with suppliers, subcontractors, and sub-consultants to assist in the development of the Project." (¶ 37.) MPC also "provided direction" to Power Engineers regarding preparation of the preliminary design drawings for the Project. (¶ 38.)

Throughout May and June of 2020, MPC and Gateway also exchanged proposed contractual terms for the final EPC agreement. (¶ 40.)

**D.     MPC is Cut Out of the Project**

On June 19, 2020, MPC learned that Gateway no longer intended to select MPC as the Project EPC contractor and intended to instead hire Power Engineers directly. (¶ 42; ECF No. 23-3 at 17.) On June 25, 2020, Gateway informed MPC that it was "ceasing any further communication with MPC Inc./MPC Power Corp. and terminating any relationship between our companies effective immediately." (¶ 42; ECF No. 23-3 at 30.)

On July 2, 2020, Power Engineers informed MPC that it intended to use materials produced under the Teaming Agreement in its future work with Gateway. (¶ 43; ECF No. 23-3 at 36.)

MPC believes that Defendants "stand to gain a significant, unfair competitive advantage through their improper and uncompensated use of MPC's [c]onfidential [i]nformation to further develop the Project." (¶ 46.) MPC also believes that Gateway's decision to exclude MPC from the Project will damage MPC's business reputation, as well as MPC's strategic partnerships with suppliers and contractors engaged on the

Project.  (*Id.*)  MPC therefore asserts the following causes of action against Defendants:

(1) Misappropriation of trade secrets in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101, against Gateway and Power Engineers (¶¶ 47–84);

(2) Breach of contract (¶¶ 85–98);

(3) Breach of implied duty of good faith and fair dealing (¶¶ 99–108);

(4) Promissory estoppel (¶¶ 109–120); and

(5) Unjust enrichment (¶¶ 121–130).

## II.  PI MOTION

In the PI Motion, MPC seeks injunctive relief enjoining Defendants from use, possession, or disclosure of MPC's trade secrets and confidential information, and ordering Defendants to return or destroy all of MPC's trade secrets and confidential information.  (ECF No. 23-5.)

**A.   Preliminary Injunction Standard**

A preliminary injunction is an extraordinary remedy.  *See Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

The Tenth Circuit previously endorsed an alternate standard that relaxed the likelihood of success requirement when the other three factors tipped strongly in the

movant's favor.  *See, e.g.*, *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006).  The Tenth Circuit abrogated this standard in 2016, announcing that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."  *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016).

Although the Tenth Circuit has abrogated its relaxed standards, the Tenth Circuit continues to endorse a heightened standard for "[d]isfavored preliminary injunctions," which do not

> merely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win.  To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (citations and internal quotation marks omitted).

Given that the Court's analysis below turns on the irreparable harm element, the Court need not decide whether MPC requests a disfavored preliminary injunction.

**B.   Analysis**

Among the preliminary injunction elements, "a showing of probable irreparable harm is the single most important prerequisite."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted) ("*Dominion Video II*").  "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such

damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) ("*Dominion Video I*"). Irreparable harm "must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).

MPC raises five arguments about why it will suffer irreparable harm if the injunction is not issued. The Court will consider each argument in turn below.

First, MPC argues that "irreparable harm is presumed" because Defendants posess and are likely to use MPC's trade secrets. (ECF No. 23 at 12.) MPC cites *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651 (10th Cir. 2004), for the proposition that irreparable harm does not need to be shown "when the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations." The continuing viability of this statement from *Star Fuel Marts* is questionable, however, given that the Tenth Circuit later clarified the narrow circumstances when a presumption of irreparable injury could apply. "Courts may presume irreparable harm only when a party is seeking an injunction under a statute that mandates injunctive relief as a remedy for a violation of the statute." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1140 (10th Cir. 2017). "When, by contrast, a statute merely authorizes injunctive relief, courts may not presume irreparable harm, as doing so would be contrary to traditional equitable principles." *Id.* Because the Defend Trade Secrets Act and Colorado Uniform Trade Secrets Act "merely authorize and do not mandate injunctive relief," *id.* at 1143, the Court will follow *Malamed* and not presume irreparable harm in

this case.

Second, MPC argues that Defendants, "having stolen MPC's Trade Secrets," "would have no reason not to share MPC's budgetary and productivity assumptions with MPC's competitors" to "obtain advantageous pricing for the Project," which will allow MPC's competitors to underbid MPC on future projects. (ECF No. 23 at 17.) However, MPC does not argue that Defendants have in fact shared, or actually have a plan to share, MPC's budgetary and productivity assumptions with its competitors. The Court finds that the theoretical possibility that MPC's trade secrets will be shared with its competitors is speculative and does not, without more, demonstrate imminent and irreparable harm absent injunctive relief. *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1011 (10th Cir. 2018) (recognizing that "[p]urely speculative harm will not suffice" to establish irreparable harm).

Third, MPC argues that "Gateway's and [Power Engineers's] actions have already caused and will continue to cause a loss of reputation and marketing potential by damaging MPC's [s]trategic [r]elationships." (ECF No. 23 at 17.) Most notably, MPC contends that "the actions described in this Motion have injured MPC's [s]trategic [r]elationship with [Power Engineers]." (*Id.*) As a result of the negative impact to MPC's relationship with Power Engineers, "MPC has already decided not to bid on at least one other project on which it would have partnered with [Power Engineers] for the engineering scope." (*Id.* at 18.)

The Court is unable to find that these harms are irreparable. MPC does not explain how Gateway and Power Engineers's actions have damaged, or will imminently damage, MPC's reputation, strategic relationships, or marketing with third parties.

*Heideman*, 348 F.3d at 1189 ("[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."). Moreover, any harm to MPC's relationship with Power Engineers as a result of Gateway's decision to partner with Power Engineers is likely outweighed by MPC's *own decision* to file a lawsuit against Power Engineers. MPC's decision not to bid on other projects involving Power Engineers is likewise a choice of its own making.

Fourth, MPC contends that Gateway has acknowledged, through the terms of its NDA, that "MPC would suffer irreparable harm should Gateway breach the NDA." (ECF No. 23 at 18.) But the language of the Gateway NDA does not support this conclusion. Although the Gateway NDA states that irreparable harm may result, it does not state that a breach of contract will automatically result in irreparable harm. (*See* ECF No. 23-3 at 4, ¶ 8 ("[e]ach Party acknowledges that a breach or threatened breach of this Agreement *may* result in irreparable injury to the non-breaching Party for which money damages *may* not be a sufficient remedy and agrees that the other Party shall be entitled to seek immediate injunctive or other equitable relief to remedy or forestall any such breach or threatened breach." (emphasis added)).)

At any rate, this contractual language alone is insufficient to support a finding of irreparable harm. *See Dominion Video Satellite II*, 356 F.3d at 1266 (recognizing that contractual statements regarding the nature of the harm resulting from a breach of contract "alone are insufficient to support a finding of irreparable harm and an award of injunctive relief"); *Email on Acid, LLC v. 250ok, Inc.*, 2020 WL 364562, at *3 (D. Colo.

Jan. 22, 2020) ("[P]arties to a contract cannot, by including certain language in [a] contract, create a right to injunctive relief where it would otherwise be inappropriate.").

Finally, MPC argues that damages would be "extremely difficult to ascertain." (ECF No. 23 at 17.)  The Court is not persuaded.  Although Plaintiff has brought numerous legal theories against Defendants, the harm Plaintiff allegedly faces is essentially the same, namely, the possibility that MPC will be improperly cut out of this project and underbid on future projects.  *If* that happens, damages are calculable: Defendants should pay to MPC what MPC would have earned on those contracts.  MPC's inability to predict *whether* it will happen is not a basis for irreparable harm.

Thus, Plaintiff's motion fails on its face to demonstrate a sufficient likelihood of irreparable harm absent injunctive relief, and the Court need not examine the remaining elements of the preliminary injunction test.  Accordingly, the PI Motion is denied.

### III.  MOTION TO STRIKE

Power Engineers seeks to strike MPC's reply brief to the PI Motion for two reasons: (1) it directly contravenes the Court's August 21, 2020 order directing MPC to file a Reply on or before September 1, 2020; and (2) it includes, for the first time and now that briefing has concluded, exhibits that should have been included in the original PI Motion.  (ECF No. 45 at 1.)

On August 24, 2020, Gateway sought an extension on its time to respond to the PI Motion.  (ECF No. 30.)  The Court granted Gateway's extension request on August 25, 2020 and extended Gateway's response deadline to September 1, 2020 and MPC's

11

reply deadline to September 8, 2020.[2]  (ECF No. 32.)  Power Engineers contends that because it did not "seek a stipulated extension of time to respond" to the PI Motion, "MPC's Reply to [Power Engineers's] Response remained due September 1, 2020." (ECF No. 45 at 2.)  However, the Court's August 25, 2020 order gave MPC a single deadline to submit its reply in further support of its PI Motion: September 8, 2020.  As such, the Court will not deem MPC's reply to be untimely.

To the extent MPC raised arguments for the first time on reply, the Court has not considered such arguments.  *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").  Accordingly, Power Engineers's request that the Court strike MPC's reply is moot.

The Court therefore denies Power Engineers's Motion to Strike.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. MPC's Motion for Preliminary Injunction (ECF No. 27) is DENIED; and

2. Power Engineers's Motion to Strike (ECF No. 45) is DENIED.

Dated this 7th day of October, 2020.

BY THE COURT:

*[signature]*

William J. Martinez
United States District Judge

---

[2]  At the time Gateway requested an extension, Power Engineers had not appeared in this action.  (*See* ECF Nos. 33–34.)